Good afternoon everyone and we'll call the the first case on our calendar this afternoon Matthew Conte versus Jose Rios, Randy Ruediger and David Hazelbarth on behalf of defendant appellant Randy Ruediger and with me is Lou Long as counsel for David Wellington. Mr. Hazelbarth do you wish to request rebuttal? Between the two of us we'd like to request three minutes out of our total 15. I have requested nine and Mr. Long three and then three remaining. So Mr. Long is going to be reduced to three minutes? Graciously yes. Okay all right that request will be granted. Thank you sir. The district court committed an error of law when it held that the amended complaint adequately pleaded a claim for relief under section 1983 despite the fact that the complaint nowhere alleges that the officer defendants acted with a purpose to cause harm unrelated to when the complaint says that the officers approached Rios for no reasons that the officers acted in violation of county policy that the officers had the chance to abandon the pursuit and chose not to. That's all insufficient in looking at them in the totality? Yes I believe it is. I have a few answers to that. First in Sacramento v. Lewis the two boys on the motorcycle were not suspected of any crime at the time the police gave chase and the same was true in Davis v. Hillside Township. In Lewis there was a discussion of unforeseen circumstances. What are the unforeseen circumstances here? I mean the Rios had done nothing. You are going 100-110 miles an hour in the middle of town. What is unforeseen about what occurred here? Well I think the accident in Sacramento v. Lewis was also foreseeable. They were as well going 100 miles an hour through a residential neighborhood. There was wrongdoing that had been perceived by the officers in Lewis. There was no wrongdoing here? I did not see any wrongdoing in either the Ninth Circuit opinion or the Supreme Court opinion. The Ninth Circuit said explicitly that the boys were not suspected of anything and the Supreme Court noted that while the motorcycle approached the police officers at a high rate of speed as Mr. Conte emphasizes it says the boy on the motorcycle walked the cycle between the two police cars and then sped off. And it was only then that the police decided to give chase without suspecting them of anything. They did want to speak to them. In Lewis Justice Souter said, let's see now, this is on 1711 just before the end of the opinion, Willard's outrageous behavior was particularly instantaneous and so was Smith's instinctive response. While prudence would have repressed the reaction, Smith's instinct was to do his job, not to induce Willard's lawlessness. Willard was the boy on the motorcycle who acted outrageously. Right, but that's my point. There is some behavior that is lawless. What is the behavior that is lawless here? He hadn't been doing anything. Well, the lawlessness in Sacramento versus Lewis was during the police pursuit driving at 100 miles an hour, which is the same in this case. Sergeant Ruediger approached Mr. Rios and then caused him to panic and flee. In the brief filed in this court, Mr. Conte abandons the allegation and the complaint that Sergeant Ruediger falsely accused him of any crime. On pages 5 and 16 of the brief, he says only that he approached Mr. Rios and caused Mr. Rios to flee and there's no reliance on the false accusation allegation. So is it the fleeing that gives reason to give chase? Well we don't need to establish a reason to give chase to satisfy maybe a fourth amendment reasonableness standard. What the plaintiff has to prove is that the officers acted with a purpose to cause harm, number one, unrelated to the legitimate object of arrest. And the brief of Mr. Conte filed in this court heavily argues and I'll say exclusively argues that there was no legitimate object of arrest because Mr. Rios was not suspected of criminal conduct. He was engaged in criminal conduct during the police chase as was the boy in Sacramento v. Lewis as was the plaintiff in Davis v. Hillside. So are you saying it doesn't matter if the police had a bad motive in approaching him in the first place? The motive that matters for the police in a high speed pursuit case? Well this is before the chase begins. Yes. If the policeman, strictly hypothetical, the policeman goes up to the guy in the car and says I don't like the looks of you, I'm going to beat you up and the guy leaves. Does he have in that case would say that the officer intended to cause harm to the man who was fleeing demonstrated by the statement that I don't like how you look and I'm going to beat you up. In this case the complaint says he approached Mr. Rios and Mr. Rios panicked and fled. And then the officer chased him. And the facts that's put in the complaint were that the chase proceeded through three townships at 100 miles an hour and Mr. Rios was put behind bars for this conduct. There was a legitimate police objective in apprehending a person in the act of committing a crime and there is no allegation in the complaint. How can there be a legitimate objective if there was no, I think you have to separate this out. You have to ask what is it that and if the only answer is he turned and fled when they had no prior reason, no inducement to go after him, doesn't that give you a different, doesn't that require a different analysis? What if he had turned and gone 30 miles an hour? Let Mr. Hedgeworth answer. I think that the police officer told the boys to stop not because there was any suspicion of any crime or traffic infraction and when the boys didn't stop, walked the motorcycle between the police vehicles and sped off, the officer turned on his lights and gave chase. Chasing the boys in that case was not to pursue them for any crime that took place prior to the beginning of the pursuit. I'm not sure what the subjective motivation was but the Supreme Court did not see anywhere in those facts that the officers intended to cause harm unrelated to a legitimate police objective. Okay, well if the boys had gone off at 30 miles an hour, would that be a different situation if Mr. Rios had gone off instead of speeding at 100 miles an hour or had gone off at 30 miles an hour? There would be no reason to chase him, right? Well I don't think it would have been a high speed chase and happily Mr. Conti would likely not have been injured. If they gave chase in that situation, I can't predict how Mr. Rios would have reacted but a 30 mile an hour drive through a residential neighborhood would not have caused this accident. And so I realize it's hypothetical but it's hard to tie that to a rule of law applicable to this case because there would be no high speed accident injuring an innocent plaintiff if they were simply traveling at 30 miles an hour. I suppose that would make it a Fourth Amendment case whether the seizure was reasonable but that's not this case. Mr. Hazelworth, let me ask you another question. Sure. You're here before us, you filed what we have to categorize as an interlocutory appeal, however you got here. Are you complaining that this motion to dismiss should have been granted because it did not state a claim under Lewis v. Sacramento or are you claiming that the motion to dismiss should have been granted because your client was entitled to qualified immunity? Yes. Yes to which one? Yes. Well, the qualified immunity analysis has two prongs. Was it constitutional right violated? And if so, was it clearly established from the date of the incident? Because we're at the motion to dismiss stage and not post-discovery at summary judgment, the analysis is does the complaint state a claim that a constitutional right was violated? And so that's why I structured my brief. Are you saying it's the same question for the procedural posture we're in? Yes. Under Rule 8, the pleading standard and the first prong of the qualified immunity analysis. Does it make any difference on a jurisdictional basis that the district court here deferred the decision on your qualified immunity claim? It makes a difference in that it gives this court jurisdiction. How? Because a denial of a motion... Well, it did deny it. The district court specifically said they were deferring a decision on qualified immunity to after discovery. But I mean, effectively the motion we filed was denied. The motion was denied. And that has the effect... Without a qualified immunity decision, typically we would not have appellate jurisdiction to review a denial of a motion to dismiss. Well, that's Ashcroft versus Iqbal. That was a qualified immunity... I understand that. At the motion to dismiss stage. And the Supreme Court slightly criticized the Second Circuit for not analyzing its jurisdiction. The Supreme Court analyzed its jurisdiction at the motion to dismiss stage and held that it was properly appealed and properly before both the Circuit Court and the Supreme Court. Okay. Okay. All right, Mr. Hazelworth, we'll have you back on rebuttal. Or Mr. Long. Oh, now you're not sure who wants it? Well, we've never been sure. Okay. Somebody will get back here for three minutes. Yes, sir. Thank you. We'll see how Mr. Long... Only one of you, right? We'll see how Mr. Long does. We'll see who needs it most. Thank you for that indulgence, Your Honors. Lewis Long, representing Officer Wellington. In response to Judge Greenaway's question about the circumstances and Judge Roth's question about the circumstances that precipitated the chase, I think those inquiries would be relevant, if at all, if we were talking about a Fourth Amendment seizure situation. But we're not. The Supreme Court makes clear in Sacramento v. Lewis that in a police chase case, it's an alleged 14th Amendment due process violation, and that the circumstances giving rise to the occasion for the chase are not consequential. What is consequential is the intent of the officers in engaging in and failing to break off the chase. And the Supreme Court made clear in that case, twice in the opinion, that there is a requirement of intent to harm in order for that claim to be actionable, not under the Fourth Amendment as a seizure, but under the 14th Amendment as a due process violation. So if the plaintiffs say we're going to amend our complaint and put with intent to do harm in the complaint, does that solve it all? That would have gotten them past a Rule 12 motion to dismiss, Your Honor, and put them in jeopardy at summary judgment. Can't we draw certain inferences from what's in the complaint that would establish that either your client or Officer Rudiger's conduct shocked the conscience? I respectfully disagree, Your Honor. As do your client. As do either of the officers. Why can't you draw those inferences as to yours? At most, you can infer an intent to participate in the chase. But as this Court made clear in Davis v. Hillside, even intentional conduct in ramming a vehicle, the vehicle in Hillside, let me back up a moment. In Hillside, the accident occurred because the officers giving chase intentionally rammed the vehicle that they were chasing. We don't even have that here. So there was intentional contact in Hillside, and this Court ruled that that did not rise to the level of intent to harm. Give me a situation that would rise to the level of intent to harm. Close to the circumstances that Judge Roth questioned Mr. Hazelbarth about, where you have the officer expressing a disdain and a willingness to injure the suspect before the suspect please. So other than the exclaiming something along those lines, you can't infer from the facts presented that there was an intent to harm? I'm trying to figure out what... You made it seem as though the absence of the magic words is the problem here, and it can't be that simple. Because if the underlying facts didn't support it, the magic words wouldn't get you past the motion to dismiss, would it? I'm sorry, I lost you mid-question. Based on your earlier question, you said that if intent to harm was mentioned in the complaint, that would get it past Rule 12. That's correct. Right. Yes. And my retort to that is it can't be so simple as to merely say intent to harm. The facts underlying the statements in the complaint have to support an inference of intent to harm. Because it can't be just you got to say intent to harm and therefore you get past the motion. Well, I hate to sound like we're reverting to a code pleading situation, but I think we're getting close to that. The Supreme Court in Sacramento required there to be allegation and proof of intent to harm. And here we are lacking. At most, we have is deviation on the part of the officers from the guidelines for maintaining a police chase. And at most, that amounts to recklessness, which doesn't rise to the requisite level that the Supreme Court said would make the violation actionable. We have to remember here that the Due Process Clause of the 14th Amendment is not intended to federalize every type of tortious conduct that governmental officials may engage in. The plaintiffs have a remedy here under state law. They are allowed to pursue that claim. They don't have a, and that claim, by the way, is grounded in negligence. It doesn't even have to rise to recklessness to be actionable under state law. Mere negligence would suffice. And so the plaintiffs had recourse, and in fact are pursuing recourse under state law. They don't have a due process claim here because they don't have that level of intent. And I see that my time is up, but if I may, I'd like to respond to Judge Fisher's question put to Mr. Hazelbarth about the procedural posture of the case. May I do so? Go ahead briefly. Yes. In Ray Montgomery County, which is cited in my brief, this court recognized that a district court cannot insulate a qualified immunity decision by recasting a question of law as if it were a question of fact. And we have a very clear and simple record here because it's on a 12B motion framing the question of law. And what we had here was the district court contorting the question, conflating the question from being a legal question, are these allegations sufficient? And trying to delve into the intent of the officers. Montgomery County was a summary judgment case, was it not? That's true. Does it make any difference? I believe it makes a difference in a way that is favorable to the officers. Because the intent, the purpose of the qualified immunity appeal, or one of the purposes of qualified immunity appeal, is to insulate the governmental officials from the rigors and the costs of proceeding through the litigation. It's not simply a defense on the merits. We understand. It's a protection against engagement in the litigation process. So for the district court to kick the ball down the road, and say, I think there are some unresolved factual questions, completely entangles the law enforcement officials in the litigation process. Before the district court, did you cite the case of George v. Real? I don't recall so. I just wondered why that didn't seem to factor into the analysis at all. I have to admit, Your Honor, I'm not familiar with that case. You're not familiar with that case? No, sir. Okay. All right. Thank you. We'll have you back on rebuttal. And Mr. Wheat? Wheat. As opposed to Wecht. Yes. It looks awfully similar. But I know you're not David Wecht. It does. I told these gentlemen I've been confused with him before. But no, not related. It's pronounced Weast. Wheat. Okay, Mr. Wheat. Thank you, Your Honor. Good afternoon. May it please the court. My name is David Weast. And I'm here on behalf of Matthew Conti in this case. Your Honor, there's a high-speed pursuit of an individual. Mr. Wheat, keep your voice up. I'm sorry. High-speed pursuit of an individual who had not committed any crime and was not suspected of any wrongdoing whatsoever is conduct which does not further legitimate government interest. Therefore, it is consciously shocking. It is arbitrary. It is a violation of due process. That is precisely what Mr. Conti has pleaded in this case and at the motion-to-dismiss stage. The district court and this court must accept those allegations. So what do you do about Lewis? Lewis, I believe, is clearly distinguishable. I disagree with the description from my opposing counsel. Lewis did find... Lewis did find... I'm sorry. I think I'm close enough. Lewis specifically says at the outset of its opinion that it was a high-speed chase aimed at apprehending a suspected offender. And under those circumstances, an intent to harm was required. The individual is clear in the Lewis Supreme Court opinion. They were speeding when the police first observed them. That's what was the commencement of the entire incident. What were they suspected offenders of doing what? Speeding. Speeding. All right. And that's enough. That's enough. There was a suspicion of something that the police had the right to stop them. And if the individuals did not obey the police command, which they did not do in Lewis, the police had the right to pursue them. It's all right to have a high-speed chase in a congested area for a traffic violation? That's what the court said in Lewis. From a constitutional standpoint, the court said it was okay. From a negligence standpoint, it may be different. What if Mr. Rios was illegally parked? That might present a different situation. Would that change the facts in this case? It would. Under your interpretation of Lewis? It would. A basis to stop him, to detain him. And if he doesn't obey that command, Lewis says that it's not a constitutional violation if the police then pursue, unless there is a separate intent to harm or intent to worsen legal plight. In this case, there was no... The circumstances giving rise to the pursuit do matter. They absolutely matter. And in this case, what we've pled and what the facts will show is there was absolutely no basis to commence the pursuit of Mr. Rios. What are the affirmance in particular that speak to intent to harm? I believe, as you indicated before, Judge Greenaway, that they can be inferred by the lack of the reason to commence the pursuit. Having no basis to stop Mr. Rios, that he had done nothing wrong, was not suspected of doing anything wrong. The fact that they initiated and continued this high-speed pursuit through the congested commercial and residential neighborhoods at speeds in excess of 100 miles an hour, the jury or fact finder can certainly infer an intent to harm or an intent to worsen Mr. Rios' legal plight. He should have been free to go and go on his way, however he chose to do so. How can you... Here's what I want to know, if I'm understanding you correctly. In your complaint, the mere fact that the police went after Mr. Rios is a sufficient averment to infer an intent to harm? An intent to harm or an intent to worsen legal plight is what is required. Just that one fact? The fact that there was no basis whatsoever to pursue him, to detain him in any fashion, and yet they did so, again, in a highly dangerous manner. Well, suppose Mr. Rios looked at him, looked at the officer furtively and then turned and ran and jumped in his car. Would that be... I'm trying to figure out how this one fact can give you a sufficient basis for us to infer an intent to harm. I don't know that it's necessarily the one fact. I think it's the... The overriding fact is that he had done nothing wrong and couldn't be suspected of anything wrong. Well, if this was a Terry stop, Mr. Rios was walking down the street and the police officer stopped him and said, we want to know what you're doing around here. And he turns around and runs. They can chase him, right? Okay, we've cited a case. If in a Terry stop, you have to be able to articulate facts for reasonable suspicion to stop someone. And we've cited a case where there was an individual who came out of a residence, was approached by someone holding a gun, didn't touch the gun. The police came up. That individual did run. The police pursued him on foot, tackled him, arrested him, found some illegal contraband. And the court said that was not a sufficient basis. The police had no right to chase him. And that's similar to this case. The police had no way to pursue Mr. Rios. He hadn't done anything wrong. And a jury can certainly infer an intent to worsen his legal plight. Why else would the police do that? Maybe they can offer an explanation, but there's certainly nothing in the amended complaint. One of your adversaries suggests that had your complaint merely stated the words, the magic words in this case, intent to harm, that that would have been sufficient. I agree with what you had said in response to that, Judge Greenaway, that the magic words aren't what's required. The facts that would allow the inference of an intent to harm. And the Davis court discusses that and says an inference of intent to harm. In the very first paragraph, I say Lewis is dispositive that in the absence of evidence from which a jury could infer a purpose to cause harm, unrelated to the legitimate object of the chase, the evidence doesn't satisfy the requisite element of arbitrary conduct. In this case, we have pled facts from which a jury could infer an intent to harm. Again, with the absence of a legitimate government interest in this pursuit, the jury can certainly make that inference. And the magic words are not necessary. I guess I understand your argument, but I'm still, what's this? What's harm are you intending? What harm is it? What harm did the officers intend to bring upon Mr. Rios? Sure. Lewis talks about intent to harm or intent to worsen legal play. What does that mean? Again, well, what does, what do those magic words mean? It's a good question. I'm not going to find any cases that specifically articulate I'm glad you couldn't find it either. I'm sorry? I'm glad you couldn't find it either. So I'll do my best again. So how are you to infer something from words that have no legal meaning? Sure. When Mr. Rios was sitting along the side of the street, having done nothing wrong, he was free to go about his business and go wherever he wanted to go. As long as he was doing so lawfully. Once Mr. Officer Ruediger activated his lights, activated his sirens, he was now indicating that he was intending to detain Mr. Rios. That in and of itself is worsening his legal play. It sounds to me like it could have been a violation of police regulations in Mars or wherever you were. It sounds like it could be a violation of police regulations, correct? Correct. I don't know that it sounds like with Rios taking off that a good police officer would have thought, hey, I better follow that guy. And then the speed got higher and higher and higher and he said, I got to keep following that guy. Now, you have to get from a violation of police regulations up to that level of showing that the conduct shocked the conscience. I think it's, while being a violation of police regulations, it's also more than that. When did it become shocked the conscience? At that very instant. That shocked the conscience? When you have no basis to turn the lights on. That shocked the conscience? I believe it does. If you have no basis to suspect somebody of doing anything, just as in a Vito case that we've cited and the police chased them and tackled them and the court says you can't do that. You can't do that to Mr. Rios. You can't turn your lights on and say, I'm going to stop you and whatever you decide to do now, I'm going to chase you at a hundred miles an hour, even though I had no reason to detain you to begin with. That shocked the conscience. That's a tough argument because a lot of black folks would have a claim if all you needed was an officer coming up to someone who's not doing anything and doing whatever, right? I mean, it can't be that every time that happens, that there's an intent to harm and you have a substantive due process. Well, what the officer should have done is not pursue Mr. Rios. If he chose to go away, they should have let him go. It can't be that every time somebody runs, that if the officer follows, that satisfies a substantive due process. That can't be it, right? I mean, that's what you're saying to us. Right? I mean, it's got to be because you said that you only need that one act, right? Correct. And there was nothing more. Correct. Did I misunderstand you? No. Right. So anytime someone, a citizen is anywhere and a police officer sees the citizen and the citizen, whatever, runs, skips, alights, whatever verb you want, and the police goes after him, you may infer from that that an intent to harm. I believe so. I mean, again, the court in Nevada said that the police do not have the right to pursue that person under those circumstances. So if they do pursue that person, they're intending to worsen his or her legal plight because they're pursuing them and intending to detain them when they have no legal basis to do so. Even if you can show, even if you can show that there are inferences that can be drawn from Rudiger's conduct that can show intent to harm as it relates to him, what about Officer Wellington? He gets in this chase. He doesn't know that there wasn't any basis to stop re-hosting the first instance. He's in a neighboring case. He's the one who's in Mars and they're going from West Middlesex to Mars and end up in Gibsonia. How can you show an intent to harm involving Officer Wellington? Officer Wellington, we continue to do this discovery in this case and we've learned more facts than are in the amended complaint. But you're not at that point yet. I understand. You're at your complaint. Right. But Officer, and we would obviously request the amendment to add those facts if the court finds that the amended complaint is not sufficient. Officer Wellington was there at the outset. He also had no basis to stop Mr. Rios. He chose to take the lead in the pursuit, continue it at these high speeds through the residential and commercial neighborhoods until it resulted in the collision. So Officer Wellington had no more information about Mr. Rios than Officer Rudiger did in order to commence and continue the pursuit. Now, where was Wellington? I thought Wellington came slightly after the fact. What the facts have shown is that... In your complaint. In the complaint. Yes, Your Honor. The complaint, I believe, alleges that Wellington joined in the pursuit and took over   But he doesn't know how this chase started. There's nothing in the complaint that says that he was involved in the pursuit. There's nothing alleged in your complaint that Rudiger said to Wellington over the police radio, listen, I didn't have any reason to stop this guy, but now that he fled, we're going to find out what he's doing here. That never happened. That's not in the complaint. That's not in the complaint. Maybe it happened, but it's not in your complaint. Correct. Okay, so what is there... How do you get intent to harm at this stage? How do you prove intent to harm at this stage against Officer Wellington? Based on what's alleged in the amended complaint, it would be more difficult to find an inference of an intent to harm on the part of Officer Wellington. Your Honor, you are correct. But based on the facts that we've learned in discovery, we believe that Officer Wellington was involved at the very outset of the pursuit and took the lead immediately. So you mean Officer Wellington, you now believe, initially saw Rios run? Because if he didn't initially see Rios run, then he would have been there at the point where the intent to harm began, which is what you argued before, right? Right. What occurred was Officer Rudiger was following Mr. Rios, not pursuing him, following at a slow speed for a while, called for backup. Officer Wellington and Officer Schmidt approached the location from a different direction. Officer Rudiger is... These are the facts you know now? Correct. Okay, then let me stop you and put to you Judge Fischer's question yet again, which is if Officer Wellington wasn't there at the very beginning, Officer Wellington is just following the lead of a fellow officer. He sees that there is a pursuit. He assumes it's a legitimate pursuit. Where can we infer, even let's accept for a moment the facts that you've learned, how can we satisfy the intent to harm? What may we infer from those facts that would ascribe liability to Officer Wellington? I believe there are some additional facts, which... Okay. Tell me all the facts. Yeah, sure. There are radio communications before the actual pursuit begins when Officer Rudiger is following Mr. Rios at a slow speed. Radio communications that Officer Wellington is part of and Officer Schmidt, the third officer defendant, is also part of. At no point does Officer Wellington learn of a legitimate basis to pursue Mr. Rios. Again, they're all in the same situation where there's no legitimate basis to pursue him. Officer Rudiger decides to activate his lights and his sirens. Mr. Rios leaves at a high rate of speed and Officer Wellington takes the lead in the pursuit. We believe that under all of the facts, a jury, a fact finder could infer an intent to worsen the legal plate on behalf of both of those officers. Okay. I see my time is up. All right, Mr. Lee. Thank you. Thank you very much. And I think we're going to have Mr. Hazelworth back, Hasselworth back on... Mr. Long is quite a guy. Um, there are no magic words necessary for pleading a claim. So you disagree with your co-counsel because that's what he said. Well, magic words are enough and magic words would have made your job and my job and his job a whole lot easier. So you say. But the Supreme Court did not infer any intent to cause harm or worsen legal plate by the officer's decision to chase the boys on the motorcycle. And the Lewis opinion says that the motorcycle approached... was approaching at high speed. It does not say speeding. So going 40 on a 40 mile an hour road, I consider that high. But it doesn't say speeding. They were approaching police activity. And I think I emphasized before that he walked the bike between the cars. The opinion says slowly maneuvered. I get the sense he's sort of doing the waddle thing between the two police cars. If this court were to infer an intent to cause harm by the decision to chase itself, then that's modifying the Supreme Court's test, which requires an intent to cause harm unrelated to a legitimate police objective. If there's a lacking of a legitimate police objective, if there is sort of a inchoate Fourth Amendment case that's brewing here, that doesn't rise to a conscience-shocking level of conduct necessary for a 14th Amendment violation. The cases that Mr. Conte relies on, Navedo and also Bonner, were Fourth Amendment cases. Was the pursuit and the ultimate seizure reasonable? The decision to chase does not have to be reasonable in this court's judgment. It must shock your conscience. And the Supreme Court held clearly in Sacramento versus Lewis, the only conduct that can satisfy the level of conscience-shocking conduct for a substantive due process violation in a high-speed case is an intent to cause harm. The analogy is not to the Fourth Amendment, but to the Eighth Amendment. The Supreme Court's opinion in Lewis drew a distinction between Eighth Amendment cases where there's a prison doctor treating a patient, where deliberate indifference is enough to satisfy the standard for violating the Eighth Amendment. But in a prison riot case where facts are rapidly evolving, decisions are made in haste, things are unclear, the Supreme Court requires a malicious and statistic use of force. And it said that level of conduct is applicable to a high-speed pursuit case and a 14th Amendment challenge. Let me ask you this question from the Lewis case. It's... Justice Souter says, accordingly, we hold that the high-speed chases with no intent to harm suspects physically or to worsen their legal plight. What definition or what meaning should we ascribe to or worsen their legal plight? You would be charting new territory to define that because I also couldn't find a case analyzing that. But I'll tell you what it does not mean. It does not mean chasing a boy who committed no crime at 100 miles an hour and fatally injuring him because you pressed to the hill and impacted him with your police vehicle. It does not mean chasing a driver of an Acura with some rear-end damage at 70 miles an hour, ramming him sufficient to knock the driver's head against the steering wheel, pass out, and cause massive property and personal injury damage. That's not worsening his legal plight. Okay, great. Then give me an example. An example, I think, would be perhaps something like entrapment where the conduct of the state actors leads the person they're pursuing to engage in some conduct that, not to put the definition in the answer, but that worsens his legal plight. I had trouble coming up with this and I had some smart people and we had trouble too. You had to try to carjack another car? Sure. I think that worsens legal plight. I don't know how police conduct would cause him to carjack a car. But fleeing the police is not the police's fault. You know, when the guy flees the police pursued, which is not analyzed under the Fourth Amendment. Suppose the officer induced the flight. For instance, and this, I think, follows on to Judge Roth's earlier question. Let's say there was a threat to the person and make it as egregious as you want and that induced the flight. And if that threat involved a threat of bodily injury, that itself satisfies the intent to harm unrelated to legitimate police objective. If it's a threat that simply induces him to flee, I'm not sure that that would worsen his legal plight. I mean, the facts in this case, according to the complaint, were that if Sergeant Ruediger hadn't approached Mr. Rios, he wouldn't be sitting in a jail cell for having crashed into Mr. Conte. And that's true, but cause and effect does not equate causation and legal liability. Okay. All right, Counselor. And to all counsel, we thank the counsel on both sides for very helpful arguments and we'll take the matter under advisement.